IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                 15-CR-179-FPG

DONALD GARDNER,

                            Defendant.

---

**AFFIDAVIT IN OPPOSITION TO DEFENDANT'S
MOTION TO RECONSIDER DETENTION ORDER**

STATE OF NEW YORK   )
COUNTY OF ERIE       )   SS:
CITY OF BUFFLAO      )

      **MARY C. BAUMGARTEN**, being duly sworn, deposes and states:

      1.       I am an Assistant United States Attorney for the Western District of New York, and am assigned to this case, which involves a pending Indictment charging defendant DONALD GARDNER with three (3) counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e), one (1) count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1), and one (1) count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). *See* Docket Item 1. I make this affidavit in opposition to the motion for reconsideration of detention order filed by defendant GARDNER. *See* Docket Item 33.

2. To provide context for the pending motion, in summary, it is the position of the government that the evidence developed during the investigation establishes that defendant GARDNER created a false Facebook page and assumed the identity of a young boy in the range of 10 to 12 years old (whose picture the defendant found on the internet), to communicate with young girls to obtain images constituting child pornography. The defendant, using the assumed identity of the young boy, succeeded in his goal, and convinced a young girl to produce images constituting child pornography, which the victim sent to him via Facebook. Only after one of the intended victims confronted the defendant in the communications and wrote that she thought it was much older than the boy shown in the Facebook picture, the defendant disabled the Facebook account. A federal search warrant was obtained for the defendant's residence, and during the execution of that search warrant, he admitted this conduct which provides the basis for the charges in the Indictment.

3. At arraignment on October 1, 2015, this Court ordered defendant GARDNER released on conditions (*see* Docket Item 5), and the defendant was released to his home in the Northern District of New York on October 13, 2105, on conditions that included Electronic Monitoring via home detention. As a result of the defendant's noncompliance, his conditions of release were modified to include home detention with a Global Positions Satellite (GPS) monitoring system. The defendant's pretrial supervision in the Northern District of New York included, among other conditions, restriction to that residence at all times except for medical needs or treatment, religious services and court appearances pre-approved by his supervising officer. *See* sealed Violation Report of Defendant Under Pretrial Supervision, dated February 9, 2017 (the Violation Report).

4.      The Violation Report was submitted to the Court, and a Summons was issued for the defendant to appear for a violation hearing.  Docket entry, dated February 10, 2017. The Violation Report detailed the defendant's noncompliance with the residence restrictions and failure to comply with the pre-approved timeframe and location for an employment interview.  Not only did the defendant fail to comply with the preapproved requirements, but he lied to the supervising officer about his noncompliance.  After the defendant was confronted with the GPS data demonstrating his noncompliance, the defendant finally admitted the conduct and stated that he "tried hard not to do it, but gave into himself."  The defendant also acknowledged that at that time of the day at the business he went to without permission, likely may have underage persons congregating, which would have violated his release conditions.  *See* Violation Report.

5.      The defendant's adjustment to pretrial supervision has been "less than favorable since the inception of his supervision on October 13, 2015", involving, among other things, engaging in the high risk behavior of "sexting".  The defendant has sent "sexting" messages twice in error to the supervising officer.  *Id.*  The first sext sent by the defendant to the supervising officer was at 6:36 p.m. on October 3, 2016, and stated "If we fuck u want me to wear a condum".  *See* screen shots of text messages attached hereto as Exhibit A.  Later that evening, the probation officer and a cybercrime specialist made an unscheduled home contact and inspected the defendant's cell phone.  While there was no evidence of internet use, which would have violated the conditions of the defendant's release, the cell phone showed that the defendant sent the text message to the probation officer after sending multiple "sexting" messages to his then-girlfriend.  The supervising officer discussed the sexting with

the defendant, warned that continuing "sexting" is "high risk" behavior, and directed the defendant to discuss the behavior with his therapist.  Although the defendant was "sexting" his then-girlfriend, who was older than 18, the "sexting" messages unquestionably show the defendant's aggressive sexual tone.  *See* Exhibit A.

6. Even after being warned that "sexting" was high risk behavior and reporting the "sexting" behavior to his therapist, the defendant sent another "sext" to his supervising officer on December 23, 2016 at 7:17 pm ("what u wearing").  On January 3, 2017, the supervising officer made an unscheduled visit at the defendant's individual treatment session with his therapist to review the defendant's cell phone.  *See* Violation Report.  The content of the defendant's cell phone showed sexting messages with another female, some of which appeared mutual, and included messages in which the defendant was aggressively pursuing sexually explicit communications and behavior.  The defendant initially denied the conduct, but ultimately admitted engaging in "sexting."  The therapist and supervising officer concurred that the defendant's "sexting" was "high risk" behavior.  *See* Violation Report.

7. The United States Probation Officer notified the Court of the defendant's continued sexting, which authorized a third-party contact with the individual the defendant was "sexting".  On January 12, 2017, the supervising officer contacted the female, and she confirmed the contacts, and told the officer that she became acquainted with the defendant through his girlfriend in August, 2016, but was unaware of his pending criminal charges.  *Id.*  According to the female, she does not have children, the person named "Serenity", who was

discussed in the sexting messages, is the young daughter of her male boyfriend, but that the defendant did not have contact with Serenity.  *Id.*

8.  On February 21, 2017, the Court conducted a revocation hearing concerning the Violation Report, during which the Defendant appeared in person with his counsel. After considering the Violation Report, the submission on behalf of the defendant, and the arguments of the parties, the Court revoked the defendant's bail.  *See* Minute Entry, dated February 21, 2017.  The defendant filed the Motion to Reconsider Detention Order (*see* Docket Item 33).

9.  The violation of a bail condition by a defendant released on bail conditions may result in the revocation of bail.  *See* 18 U.S.C. § 3148 (Sanctions for violation of a release condition); *see e.g. United States v. LaFontaine*, 210 F.3d 125, 129 (2d Cir. 2000) (bail revoked where, among other things, probable cause existed to believe that defendant engaged in witness tampering); *United States v. Ruggiero*, 796 F.2d 35 (2d Cir. 1986) (bail revoked where Court perceived defendant's conduct as threat to witness and prosecutor, and defendant involved in organized crime activity); *but see Bitter v. United States*, 389 U.S. 15, 16 (1967) (bail revocation unjustified where it stemmed from defendant being 37 minutes in returning to court after break in proceedings).  A Court considering whether to revoke bail is guided by 18 U.S.C. § 3148, which requires a hearing.  *Id.*  Although 18 U.S.C. § 3148 does not specify the type of hearing required, the Second Circuit has held that a defendant facing a revocation of bail should be given "an opportunity to testify and to present evidence on [his] own behalf." *United States v. Davis*, 845 F.2d 412, 415 (2d Cir. 1988).  Here, the Court conducted such a

hearing, during which it considered the information presented by the United States Probation Office, including the Violation Petition, and the information and arguments presented by the defendant and the government, before determining that the defendant's admitted violations of his conditions of his release warranted revocation of bail.  *See* Minute Entry, dated February 21, 2017.

10.     Title 18, United States Code, Section 3148 does not provide for reconsideration of an order revoking bail, although 18 U.S.C. § 3142(f)(2)(B) addresses the reconsideration of a detention order when bail is denied after a detention hearing.  According to 18 U.S.C. § 3142(f)(2)(B), a bail hearing may be reopened at any time before trial "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the [defendant's] appearance" and the safety of the community.   18 U.S.C. § 3142(f)(2)(B).

11.     Defendant GARDNER was released on conditions, that were modified as a result of his noncompliant behavior, and the defendant's continuing failure to abide by the modified conditions of release serve as ample basis to revoke his bail.  The second letter/memo from the therapist submitted in support of the motion for reconsideration simply explains or interprets the earlier memorandum, dated July 12, 2016, and does not contain any new or additional information that was not known to the defendant at the time of the revocation hearing.  The opinions expressed in the new report, dated February 21, 2017, appear to contradict the information in the Violation Report, namely that the therapist and

supervising officer concurred that the defendant's "sexting" constitutes "high risk" behavior. *See* Violation Report.

13.    I have spoken with the United States Probation Office, who explained that there are limitations concerning the information discussed with a therapist/health care provider treating an individual in the pretrial supervision context because the defendant has not yet been convicted of the crime(s) pending against the individual.  Thus, the therapist treating the defendant under pretrial supervision would not have detailed information concerning the nature of the pending charges, would not be able to contact the defendant's employers, and is restricted in distributing information regarding the treatment of a defendant under pretrial supervision.  Despite the foregoing, the therapist here provided reports/documents containing information/opinions to the defense without consulting the United States Probation Office, and which are not based on detailed information concerning the nature of the pending charges or information from the defendant's former employers, and were not the result of a detailed assessment of the risk presented by the defendant.  Thus, it appears that the therapist would have had to have based the opinions expressed in her reports primarily, if not exclusively, upon information provided to her by the defense, and most likely by the defendant himself.  Importantly, the recently expressed opinion of the therapist contradicts her earlier opinion shared with the supervising officer to the effect that the defendant's "sexting" constitutes "high risk" behavior.  *See* Violation Report.  Accordingly, the opinions set forth in the original and additional report from the therapist should not be the basis for reconsidering or modifying the revocation of the defendant's bail.

13. The defense also submitted a report, dated July 19, 2016, by Michael Rutter, PhD, under seal, to the Court in support of the motion to reconsider the bail revocation. It cannot be disputed that the Rutter report was known to the defense prior to the revocation hearing, and cannot constitute new information that warrants reconsideration of the bail revocation. As was discussed during the revocation hearing, there is a divergence in the evidence developed during the case concerning the nature and extent of the defendant's cognitive abilities and the impact of any cognitive limitations may have upon the defendant. That difference of opinion is demonstrated, for example, in the report of Ana Natasha Cervantes, M.D., Diplomate A.B.P.N., Board Certified in Forensic Psychiatry, which was provided by the defense to the government, which the government will submit under seal to the Court.

14. In summary, the defendant has failed to meet his burden to show that new information or facts that were not known to the defense before the revocation hearing have been discovered, and which warrant reconsideration of the Court's order revoking the defendant's bail. Even if the defendant had met that burden, the additional information submitted does not provide a basis to modify the determination revoking the defendant's bail based on his persistent violations of his conditions of release, especially when his conduct is considered in light of the differing opinions as to the nature and extent of the defendant's cognitive function, and the impact of any limitations upon the defendant.

15. Based on the foregoing, the defendant's motion to reconsider detention order and/or reopen the bail revocation hearing (*see* Docket Item 33), should be denied in its entirety.

        s/ MARY C. BAUMGARTEN
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716-843-5864
        Mary.Catherine.Baumgarten@usdoj.gov

Subscribed and sworn to before me

this 3rd day of March, 2017.

s/ JENNIFER L. ATKINS
COMMISSIONER OF DEEDS
In and for the City of Buffalo, New York.
My Commission Expires Dec. 31, 2018.